Moghtaderi v Apis Capital Advisors, LLC (2025 NY Slip Op 06548)

Moghtaderi v Apis Capital Advisors, LLC

2025 NY Slip Op 06548

Decided on November 25, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: November 25, 2025

Before: Webber, J.P., Kennedy, González, Higgitt, Michael, JJ. 

Index No. 650287/20|Appeal No. 5227,5227A|Case No. 2024-04279|

[*1]Kamran Moghtaderi, Appellant,
v
Apis Capital Advisors, LLC, et al., Respondents.

The DeIorio Law Group, PLLC, Rye Brook (Jan A. Marcus of counsel) for appellant.
Arkin Solbakken LLP, New York (Deana Davidian of counsel) for respondents.

Judgment, Supreme Court, New York County (Melissa A. Crane, J.), entered December 10, 2024, granting judgment in favor of defendants, unanimously affirmed, with costs. Appeal from order, same court and Justice, entered July 9, 2024, which granted judgment for defendants after trial, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Supreme Court's conclusion that Customary Operating Expenses were intended to be deducted when calculating the amount of the Withdrawal Payments under the subject operating agreements is supported by the weight of the credible evidence at trial.
The evidence reflected that the Withdrawal Payment calculations were to be based on Excess Net Income and that § 1.09(a) was the only provision in the operating agreements that purported to define Excess Net Income. This provision, and its predecessors throughout numerous drafts, consistently and explicitly provided that Customary Operating Expenses would be deducted. Plaintiff, who was primarily responsible for interfacing with the lawyers during the drafting period, reviewed all of these drafts and never objected to this definition. Although Customary Operating Expenses were not deduced in the calculations set forth in the accompanying Schedule E, that Schedule was meant to be illustrative only and plaintiff was solely responsible for drafting Schedule E. Indeed, the evidence reflected that no one else fully understood or focused on Schedule E as everyone relied on plaintiff to ensure that Schedule E was consistent with what was stated in the text. Moreover, the deduction of Customary Operating Expenses as well as the Income Hurdle Rate was consistent with the admitted desire of all parties to address the concerns raised by the departure of a former partner to whom compensation had to be paid, even though the companies were unprofitable. The parties to the operating agreements and drafting counsel understood this prior experience to be one of the main impetuses to amend the agreements.
Any other reading of the operating agreements would render the words "less the aggregate customary operating expenses related to such Current Fees" in § 1.09(a) meaningless (see Natixis Real Estate Capital Trust 2007-HE2 v Natixis Real Estate Holdings, LLC, 149 AD3d 127, 133 [1st Dept 2017]). By contrast, Schedule E may be harmonized with § 1.09(a) by using numbers reflecting net fees and it remains a useful example of what to do if two partners leave during the same five-year period (id. at 133-134).
Any other reading of the operating agreements would also be commercially unreasonable, as it would enable a former partner to receive higher payments than an active partner in the event the company was not profitable (see Matter of Lipper Holdings v Trident Holdings, 1 AD3d 170, 171 [1st Dept 2003]).
The deduction of both the Income Hurdle Rate and Customary Operating Expenses is also consistent with the ordinary meaning of "Excess Net Income," which is some amount above or in "excess" of "net income" or profits, or, stated another way, revenue minus expenses. Plaintiff's explanation for not deducting both is not persuasive because these deductions served different purposes. The deduction of Customary Operating Expenses ensured that only profits were being counted, and the deduction of the Income Hurdle Rate ensured that some "additional piece of profit" was "reserved for the partners who are working at the firm . . . to compensate them and also to reinvest back in the business."
Plaintiff's reliance on the doctrine of ejusdem generis is misplaced, as that doctrine applies when there is a "a general term appearing in a list or series of entities which explain the meaning of the phrase" (see Certain Underwriters at Lloyd's, London v Forty Seventh Fifth Co. LLC, 213 AD3d 481, 482 [1st Dept 2023], lv dismissed 40 NY3d 1083 [2024]). To the extent plaintiff relies on the separate principle that "if there is an inconsistency between a general provision and a specific provision of a contract, the specific provision controls" (Teliman Holding Corp. v VCW Assoc., 211 AD3d 499, 500 [1st Dept 2022]), this reliance is likewise unavailing, as it is not clear that either § 1.09(a) or Schedule E is more specific.
We have considered the remaining arguments and find them unavailing. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 25, 2025